14 So.2d 380

### BARTON v. STATE.
### 6 Div. 23.

Court of Appeals of Alabama.
June 30, 1943.

Rehearing Denied Oct. 5, 1943.

J. A. Posey, of Haleyville and Pennington & Tweedy, of Jasper, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

We cannot accord to the insistence that reversible error was had upon the trial of this case in the court below. To the contrary it is clearly apparent to this court that the learned, able and experienced trial judge meticulously safeguarded the substantial rights of the defendant in every invoked ruling pending the entire trial.

The indictment charged murder in the second degree. Upon the trial the defendant was convicted of manslaughter in the first degree, which offense, of course. was comprehended and included in the greater offense charged in the indictment.

The jury, as the law requires, fixed the punishment, and in accordance with the verdict, the court duly and legally adjudged the defendant guilty and properly sentenced him to imprisonment in the penitentiary for a period of two years.

It is without dispute that Howard Wakefield, the deceased named in the indictment, died as the result of the injuries upon him as detailed by the examining physician Dr. Robert F. Blake, whose qualifications as a surgeon and physician were admitted, a witness introduced by the State. As to this, said witness testified: "I remember going down here to the body of Howard Wakefield, back on October 26, 1941, and making an examination of his body. * * I noticed two places on his body. One was an injury on the back of his neck, and one over his chest on the left side about the fifth or sixth rib. He had a broken neck. The blow that came across his left shoulder, was about twelve inches in length, and was an inch wide. In my judgment the broken neck was caused by that blow. Either of those blows could have killed him. The blow over his heart was a large bruised area, four or five inches in diameter, two ribs seemed to be driven in, etc."

As stated, the immediate cause of Wakefield's death, as above detailed, was admitted. But there were two divergent theories upon the trial as to what caused the injuries upon deceased's body resulting in his death.

The State insisted that Andy Barton struck the blows, and offered testimony in support of said insistence. In brief of the Attorney General, the statement of facts as there appears is substantially borne out by the record. To wit:

"Testimony and evidence introduced by the State tended to show:

"That on October 26, 1941, the appellant, the deceased (Howard Wakefield), and W. T. Chambless (Witness for the State) happened to meet each other at the residence of one George Lovett; that about sundown appellant, deceased, and Chambless, left the house of George Lovett in a logging truck. Chambless was driving the truck, appellant was sitting in the middle, and deceased was sitting on the right; all three were drinking whiskey. When the truck arrived at Mrs. Thomas Hill's house, which is three or four miles from Lovett's, appellant and Chambless went into the house and had a conversation with Mrs. Hill who requested them to find her husband for her and bring him home. Deceased stayed in or near the truck when appellant and Chambless went into Mrs. Hill's house. Appellant returned to the truck shortly before Chambless. The latter testified that when he returned to the truck deceased was on the ground near the truck and appellant was standing up with an iron pipe in his hand. Chambless also testified that deceased called appellant, at that time, a son-of-a-bitch and that appellant told deceased that nobody could call him that and get away with it.

"The three, Chambless, Appellant, and Deceased proceeded down the road in the truck sitting, as described before, viz., Chambless driving, appellant in the middle, and deceased on the right. Chambless testified that the lights on the truck were wired under the hood of the truck and that while driving the lights went out; that he got out of the cab of the truck to repair the lights and that while he was working on the lights he heard a 'lick' being delivered in the cab of the truck; Chambless also testified that he heard deceased say at that time 'you have killed me.' When Chambless returned to the driver's seat after repairing the lights appellant had the iron pipe in his hand and deceased was leaning on the right door of the cab with his head on the door. While the truck was being driven on down the road the deceased was either pushed out or fell out of the right door on to the ground. (The lock of the door was not operating and the door was held closed by a wire attached to the door and twisted around the coil spring in the back of the seat). The truck was then turned around and appellant and Chambless saw that deceased was dead. Appellant remained with the body while Chambless went to report the death. The State introduced in evidence the iron pipe."

Testimony introduced by the defendant tended to show:

"That deceased did not curse appellant while the truck was stopped at Mrs. Hill's house. Appellant also testified that he had never had the iron pipe in his hand either at Mrs. Hill's or when Chambless was fixing the lights. Appellant testified that Chambless turned the front wheels of the truck out of the road immediately before deceased fell out of the cab and that Chambless turned the wheels sharply to get back into the road and that deceased fell out of the truck because of such swerve. Further that Chambless was quite drunk and did not stop the truck until appellant begged him to do so at which time Chambless turned the vehicle around and went back to the body. After observing the body appellant testified that Chambless sat down on the bank near the body and said: 'I am ruined; I am ruined; I have run over him and killed him.'

"Appellant denied having any prior difficulties with deceased (viz., when appellant and deceased were making syrup for Otis Lovett two or three weeks prior to the alleged crime). And in rebuttal the State showed that at such time and place deceased threw some water on a fire causing smoke or steam to go into appellant's face and that appellant said that 'He wasn't aiming to put up with that.'"

From the foregoing it clearly appears that the State necessarily relied upon the testimony of its witness, Willie T. Chambless, for a conviction in this case. Upon this appeal we are urged in effect to accord no verity to the testimony of witness Chambless. It does appear that he made conflicting statements as to the facts of this case upon different occasions. It does further appear that this witness was more or less intoxicated, probably drunk at the time of the alleged homicide, and other matters are disclosed by the record as to this witness tending to discredit him. It must be conceded, however, that if his testimony as given upon the trial is true, the offense complained of was committed by the appellant. All of this was before the jury for its consideration, and we see no way, under the law, for this court to declare that the jury was wrong in its conclusion, or for us to say that

Chambless is wholly unworthy of belief. In other words, this court is without authority to substitute itself for the jury and to adjudge and declare that the verdict returned by the jury was wrong and unjust.

Always, a person charged with crime is entitled to a fair and impartial trial. The law contemplates and provides that such trial shall be free of prejudicial error by the trial court. Here, several insistences of error are presented, but, as stated in the outset, we discover no ruling of the trial court infected with error such as to injuriously affect the substantial rights of the defendant.

The assignments of error upon this appeal involve simple and elementary propositions of law which we feel need no detailed or extended discussion. We think the brief of the Attorney General contains a full and complete answer to every proposition advanced by appellant. This statement is indulged after having fully and thoroughly examined and carefully considered each and every proposition presented. The foregoing statement includes also the action of the court in overruling and denying defendant's motion for a new trial.

No error appearing, the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.